NANCY EMERICK, *Plaintiff in Error,*
vs.
HENRY SANDERS, *Defendant in Error.*

ERROR TO WALWORTH COUNTY COURT.

Where A, being indebted, left property in the possession of B to sell and pay his debts; and B afterwards promised S to pay him a debt which A owed him; held that this promise, not being in writing, is void by the Statute.

The principal question to be determined in cases of this kind is, whether the promise or agreement is to answer for the debt, default or miscarriage of another; and this depends on whether the promise can be deemed original or independent of the former liability, or whether it is collateral thereto.

The plain, palpable intention of the Statute is, that whenever a debt is payable by one person to another, no third party shall be held liable for such *debt* unless his promise to be so liable shall be in writing, and be founded upon a valid consideration.

So long as the original debt remains due, and payable by the debtor to his creditor, any arrangement by which another party promises to pay that debt, is within the very letter of the Statute, and it matters not from what source the *consideration* for this latter promise flows; it is none the less an agreement to pay the debt of another.

But if by the terms of this latter agreement the former liability is taken away or destroyed, the agreement becomes original.

When the original liability continues a promise to pay, such debt by a third person must be in writing and also for a good consideration.

The object of the Statute will be best carried out by requiring all agreements to pay the still subsisting debt of another, to be evidenced by writing; unless such subsequent agreement or promise be founded upon a new and independent consideration, passing between the newly contracting parties, and independent of the original contract.

Henry Sanders, the defendant in error, commenced a suit in a Justice's Court against Nancy Emerick, the plaintiff in error, by summons returnable the 10th day of February, 1852, and declared against the said defendant below, as follows:

"Henry Sanders, plaintiff in this cause, complains of Nancy Emerick, defendant in this suit, in a plea of trespass on the case upon promises; for that whereas heretofore to-wit: on the first day of January, 1851,

at Walworth, in said county, G. W. Emerick being then indebted to the said plaintiff in a large sum of money, to-wit: in the sum of fifty dollars, lawful money, &c.; the said defendant in consideration of the sale and delivery to her at that time, by the said G. W. Emerick, of divers personal property of the said G. W. Emerick, to-wit: a quantity of wheat and one horse of great value, to-wit: of the value of one hundred dollars; then and there undertook and faithfully promised to pay to the said plaintiff the said indebtedness of the said G. W. Emerick, whereby the said defendant became liable to pay the same to the said plaintiff, and being so liable, the said defendant then and there promised to pay the said plaintiff the said sum of money, when she should be thereunto afterwards requested.

Also, for that the said defendant heretofore, to-wit: on the day and year last aforesaid, at Walworth aforesaid, received of G. W. Emerick divers personal property of great value, to-wit: a quantity of wheat and one horse, for the purpose, among other things, of paying the said plaintiff the amount then owing to the said plaintiff by the said G. W. Emerick, to-wit: the sum of fifty dollars; and the said defendant afterwards, to-wit: on the day and year and at the place last aforesaid, disposed of and converted the last mentioned property to his own use, and received the money therefor, without paying the same or any part thereof to the plaintiff.

Also—(a count of sixty dollars money had and received by the defendant to and for the use of the plaintiff.)

And being so indebted, the said defendant afterwards, to-wit: on the day and year last aforesaid, at

the place aforesaid, in consideration of the premises aforesaid, promised to pay the said several sums of money above mentioned, respectively to the said plaintiff on request. Notwithstanding &c., * * * to the damage of the plaintiff one hundred dollars.

To this declaration the defendant pleaded the general issue. On the 17th day of February, 1852, the cause was tried by the justice, and a judgment was rendered in favor of the plaintiff for fifty-three 59-100 dollars, from which the defendant appealed to the County Court. The cause was tried by a jury in that court at the April term, 1852, which trial resulted in a verdict and judgment in favor of the plaintiff for fifty-eight 92-100 dollars and costs.

On the trial in the County Court, various exceptions were taken to the ruling of the court, which are disclosed by the bill of exceptions incorporated with the record, from which the following case appears:

The plaintiff below offered, and read in evidence, two promissory notes, as follows:

$40.00.   One year from date I promise to pay Henry Sanders, or bearer, forty dollars, with interest at twelve per cent., value received.

    (Signed,    G. W. EMERICK.
Walworth, Nov. 10, 1849.

$6.34.   By the first day of April next, for value received, I promise to pay Henry Sanders, or bearer, six dollars and thirty-four cents, with use.

    (Signed,)    G. W. EMERICK.
Walworth, December 28, 1849.

The notes having been received in evidence, the plaintiff below called as a witness William Bell, who testified as follows: Witness knows the notes just read, and the signature to each. They were signed

by George W. Emerick. The signature is in George W. Emerick's hand writing. The plaintiff left the notes in the hands of the witness for collection, as agent of the plaintiff. Witness had a conversation with the defendant; asked her when George W. Emerick was coming back from the north, as he wanted to know; and also what means there were to get money on the notes. Defendant said in reply, that the creditors of George W. Emerick need not be afraid about getting their pay, as he had left property enough in her hands to pay all the debts against him. She said plaintiff had a note of forty dollars against George W. Emerick, and that it was an honest debt and should be paid. Witness then told her he had the note of forty dollars, and a note of six dollars. Don't recollect what the conversation was after that, only that George W. Emerick had left plenty of property in her hands to pay the debt of George W. Emerick, and that the note of forty dollars should be paid. She said that George W. Emerick had left with her a horse, wagon, wheat and oats, and a quantity of barley and corn. That the property on the farm was always considered and understood in the neighborhood to be George W. Emerick's. This conversation was in the spring of 1849 or 1850. She said the note was given for a horse which George W. Emerick bought of the plaintiff.

On cross-examination the witness further testified that the first conversation with defendant was at defendant's house—no one was present—thinks the large note of $40 was not due at the time. Defendant said at a subsequent conversation with witness, that she had sold seven hundred dollars worth of personal property of George W. Emerick. Witness told some

one that he did not think defendant legally liable, but
that he would scare the money out of her.

David Ottman was also called as a witness for the plaintiff below, and testified in substance as follows: The witness had a conversation with the defendant in the early part of the summer of 1850. She wanted to borrow of witness fifty dollars until after harvest, to pay a man in the State of New York by the name of Russerty. Witness told her if he thought plaintiff would not come up from the south until fall, he would lend her the money. Defendant then said if plaintiff did come up before fall, she would be as bad off as ever, as she owed Mr. Sanders. She said she owed the plaintiff for a horse or horses which her son, George W. Emerick, bought of plaintiff. She said the amount which she owed to plaintiff was upwards of forty dollars. She said she had to pay it, because George W. Emerick had left property with her to pay this debt. She then told the witness what property George had left with her : a horse, wheat ; that she had sent two loads of wheat to the lake ; some corn, some barley, some wheat, which was in witness' granary ; said she had sold the horse to a person of whom they had grave-stones ; she said she sold the horse for sixty dollars, and for more than the debt against George, and she could well afford to pay the plaintiff the notes or demands she had so promised plaintiff. There was about forty bushels of wheat in witness' granary. Defendant told witness she had told plaintiff that she was to pay this debt for George, for George had made arrangements with her for that purpose. She said it was rumored that George had gone off to avoid the payment of his debts ; she said his creditors need not fear, as he had left property enough to pay his debts.

This was in the conversation when she wanted to borrow the fifty dollars. Witness said he did not believe that George W. Emerick went off to avoid paying his debts. She said she made the arrangement with George about the time he went off; would not say positively to this. Never had but one conversation with the defendant about plaintiff's debt.

Upon this testimony the plaintiff rested his case.

The defendant below then called, as a witness on her part, Warren Emerick, and being sworn, testified to certain matters tending to rebut the testimony offered by the plaintiff, after which the defendant's counsel asked him the following question: "Do you know of the defendant paying any of George Emerick's debts?" to which question the plaintiff's counsel objected, for the reason that it was improper and irrelevant. The court sustained the objection and the defendant excepted. Another witness was asked: "What other debts did the defendant pay for George W. Emerick?" which was also objected to, the objection sustained and exception taken.

The evidence on both sides being closed, the court charged the jury as follows:

1st. If the jury find that George W. Emerick was indebted to the plaintiff in this suit upon the promissory notes read in evidence to them, and that the said George W. Emerick placed property in the hands of the defendant in this suit to pay said notes, and that the said defendant had promised George W. Emerick and the plaintiff to pay the plaintiff the said notes, after she had received this property for that purpose, in that case the plaintiff will be entitled to recover a verdict to the amount of the said notes.

2d. If the jury find that the property was merely left with the defendant on deposite, or as trustee or bailee, without making any promise to the plaintiff to pay said notes, the defendant in that case will be entitled to recover.

3d. If the jury find that she received the property for the purpose of paying the debts of George W. Emerick, and never promised the plaintiff to pay his demands he had against George W. Emerick, the defendant is not liable and will be entitled to a verdict.

4th. It was competent for George W. Emerick and the defendant to make an agrrangement for her, on a good consideration, to pay this debt which the plaintiff held against George W. Emerick, and upon the defendant's promise (after having received the consideration) to pay plaintiff the same, it then became an original undertaking of the defendant, for which she would be liable to the plaintiff, and if the jury find this to be the case, the plaintiff will be entitled to recover.

5th. If the jury find an agreement was made between George W. Emerick and the defendant, by which she undertook and promised to pay the plaintiff this debt, and this promise was made on a good consideration given to her from George W. Emerick, and afterwards the defendant promised to pay the plaintiff the same, she is liable, although the notes which George W. Emerick gave the plaintiff had never been given up by the plaintiff to the said George W. Emerick.

To each and all of these instructions the defendant excepted.

The counsel for the plaintiff then requested the court further to charge the jury.

1st. That if the jury believe, from the evidence, that the defendant, in consideration of the sale to her of the property by George W. Emerick, agreed with him to pay his debts to the plaintiff, then the plaintiff is entitled to recover the amount of that debt from the defendant; and the court so charged.

2d. That if the jury believe, from the evidence, that the defendant, in consideration of the property being put in her hands by George W. Emerick for that purpose, agreed to pay the debt against the said George, then the plaintiff is entitled to recover the same in this action of the defendant, which the court charged, " providing they find a promise moving from the defendant to the plaintiff to pay the same to the plaintiff or his agent."

3d. If the jury find, from the evidence, that George W. Emerick placed in the possession of the defendant property for the purpose of paying a debt from the said George to the plaintiff, and that said property, or any part thereof, was disposed of, and that the defendant has received the avails thereof, the plaintiff is entitled to recover said debt, or at least such part of it as may equal the avails thus received, even though there was no sale from George W. Emerick to defendant, which instruction the court gave as requested; to each and all of which said instructions, the defendant by her counsel, excepted.

The defendant then, by her counsel, requested the court to charge the jury, as follows :

1st. If the jury believe, from the evidence, that George W. Emerick left personal property with the defendant, as trustee, to pay his debts, any promise

made by her to pay the plaintiff's debt against G. W.
Emerick, not being in writing, is void; which instruc-
tion was refused.

2d. If the debt of the plaintiff still existed at the
time the promise of Mr. Emerick was made (if the
jury find a promise was made) and she was a mere
trustee of George, the promise should have been re-
duced to writing, although upon a sufficient consider-
ation; which was refused by the court.

3d. Indebitus assumpsit will not lie in this cause.
They have brought the action to recover of the de-
fendant a debt due the plaintiff from George W. Em-
erick, it coming therefore within the statute of frauds,
it cannot be recovered on such assumpsit, when the law
requires such contract to be in writing; which instruc-
tion was likewise refused.

4th. If the jury find the promise of the defendant
was made to pay the debt of George W. Emerick, it
should have been in writing; and the court so charg-
ed, but added: "But if the jury find the promise
was made on a valuable consideration, passing from
George W. Emerick to the defendant, and the defend-
ant promised George W. Emerick and the plaintiff to
pay the debt, it became an original undertaking of
the defendant, and need not be reduced to writing."

To all of which rulings and refusals of the court the
defendant excepted.

The plaintiff had verdict and judgment.

*Baker and Meacham*, for the plaintiff in error, made
the following points, which were argued at bar by
J. W. Farr.

I. The court below erred in refusing to charge the
jury, that if they believed, from the evidence, that

G. W. Emerick left property with the defendant below, as trustee, to pay his debts, any promise made by her to pay the debt of the plaintiff below against the said Geo. W. Emerick, not being in writing, is void.

The testimony and the nature of the whole transaction show, that the defendant below was merely a trustee; and yet the judge charged, that though the jury believed this, a promise made by the defendant not in writing, is not void.

1. A trustee of a debtor under an assignment to pay his debts, is not liable, at law, on his promise to one of the creditors to pay him the amount due from the debtor, especially if the promise is not in writing For it is a collateral undertaking, and without any consideration as between the promissor and promisee. Besides, it is a matter of purely equitable jurisdiction, for if one creditor may recover at law for his debt, the whole trust fund may be thus exhausted, to the injury of the other creditors. *R. S.,* 388 ; 24 *Wend.* 9; 4 *Kent. Com.* 307; *note A.; id.* 311; 7 *Cranch.* 69–67. *Chit. on Con.* 282–3.

2. In this case the defendant received the property merely as a *trustee, and not as a purchaser, or for her own benefit.* It was not a *transfer of a debt.*

3. But whether the defendant was trustee or agent, or acted as principal, she could not be liable on her promise to pay G. W. Emerick's debt, unless on sufficient consideration, and the promise was in writing. 2 *R. S.* 388 ; *N. H.* 345–397 ; 17 *Mass.* 575 ; 4 *Pick.* 59 ; 20 *Wend.* 201 ; *Chit on Con.* 507 ; *id.* 613; *note* 1 ; 4 *J. R.* 422 ; 12 *id.* 291 ; 2 *Denio,* 45–57.

II. 1. If the plaintiff's debt survived against G. W. Emerick, then the defendant's promise was col-

lateral, and must have been in writing to be binding. 20 *Wend.* 201.

2. The extinguishment of the plaintiff's original debt, or an agreement not to prosecute, or the discontinuance of a suit for its recovery, might perhaps have been a sufficient consideration; but nothing of the kind in this case exists. Plaintiff's debt is still existing against G. W. Emerick. (See authorities above cited.) And herein the court below erred in its charge to the jury.

III. The court erred in refusing to charge the jury that indebitatus assumpsit, or the count for money had and received, would not lie in this case.

The plaintiff below cannot recover on his first count, because it alleges *a sale* of the property to the defendant, and in this and other respects, is not sustained by the proof; nor yet on the second count, which substantially charges that the defendant received the property as trustee; for the reasons above stated.

1. Indebitatus assumpsit, for money had and received, which is the third count, cannot be sustained on the state of facts, apparent by the proof. There should have been a privity of contract between the plaintiff and defendant, duly made out, on sufficient consideration. 4 *B. & C.* 166; 8 *id.* 308; 12 *More,* 576; 4 *Bing.* 315; *Chit. on Con.* 614, *and note y.*

2. The money sought to be recovered should be the plaintiff's own money, or received for his property converted into money, or otherwise appropriated or destroyed. But here, the property left with defendant until sold, was the property of G. W. Emerick, and the avails after sale were still his, subject to the equitable rights of creditors. 16 *East.* 274; 5 *Bing.*

*N. C.* 420; *Chit. on Con.* 609, *note n; id.* 614; 9 *Bing.* 672, *S. C.*

The defendant could not, without express assent of G. W. E., transfer by agreement to the plaintiff a right to the property assigned, or to its avails, so that this count would be sustainable against her. G. W. E. should have been a party to any arrangement of this nature, in order to vest a legal right in the plaintiff, and that arrangement should have been specific, and not for the benefit of creditors generally. 7 *N. H. Rep.* 345–397; 5 *B. & C.* 591; *Ld. Raym.* 928; *Chit. on Con.* 613.

4. But if the plaintiff claims to recover under a special contract, he cannot do so under the third count, for it is a contract unrescinded and not fulfilled, and indebitatus assumpsit will not lie. 1 *Ch. Pl.* 298, 304–5; 12 *J. R.* 274; 8 *id.* 439; 7 *Cow.* 93–4; 9 *id.* 46.

5. A chose in action cannot be assigned, so as to be sued in the name of the assignee.

IV. The court below should have permitted the defendant below to prove that she had applied all the avails of G. W. Emerick's property which come to her hands to the payment of his debts.

1st. Because she was a trustee or bailee of the property, and not a purchaser, and if liable at all to the creditors of G. W. Emerick, she could only be liable to the amount of his property remaining in her hands unapplied to the payment of his debts. 2 *C. & J.* 94; *Chitty on Con.* 512.

2d. The proof showing, or tending to show, as far as it at all went, that G. W. Emerick turned out his property to pay his debts generally, the court should have received testimony to show that all his property

received by her, had been applied to the payment of his debts.

*J. W. Farrar*, who argued the above points at bar for the plaintiff in error, also cited the following authorities: *Crow vs. Rogers*, 1 *Strange*, 192 ; *Price vs. Easton*, 4 *B. & Ald.* 433 ; *Tomlinson vs. Gill*, 6 *A. & E.* 564 ; *Bickmyer vs. Darnell*, 1 *Salk.* 27 ; *Matron vs. Wharam*, 2 *T. R.* 40 ; *Forth vs. Stanton*, 1 *Saunders*, 211, *and notes ; Fish vs. Hutchinson*, 2 *Wilson*, 94 ; *Roberts on Fr.* 208 ; *Com. on Contr.* 62–63 ; *Curtis vs. Brown*, 5 *Cush.* 488 ; 18 *Pick.* 462 ; *id.* 369 ; *Nelson vs. Boynton*, 3 *Met.* 396 ; 6 *Pick.* 509 ; 15 *id.* 159 ; *Anderson vs. Davis*, 9 *Ves.* 136 ; 12 *id.* 33 ; 7 *H. & J.* (*Md.*) 391.

*H. F. Smith*, for the defendant in error, made the following points :

1. If George W. Emerick sold property to the defendant below, and if the defendant, in consideration of the sale, promised G. W. E. to pay the debt he owed to the plaintiff, such transaction constitutes an original undertaking on the part of the defendant below, and the plaintiff is entitled to recover, even if no promise was ever made to him. *Farley vs. Cleaveland*, 4 *Cow.* 432 ; *Ellwood vs. Monk*, 5 *Wend.* 235; *Barker vs. Bucklin*, 2 *Denio*, 45 ; *The Del. and Hud. Canal Co. vs. Westchester Co. Bank*, 4 *Denio*, 97.

2. Even a *delivery* of property, by G. W. Emerick to defendant, for the purpose of paying plaintiff, *without any sale*, would be sufficient consideration for a promise by defendant to pay the debt, and would be enforced by plaintiff. *Lippincott et al. vs. Ashfield*, 4 *Sanford, Sup'r C. Rep.* 611 ; *Wyman vs. Smith*, 2 *id*, 331.

In such case, the promise is not, in substance, a

promise to pay the debt of another. It is a promise to pay one's own debt in a particular way—that is, by discharging another's debt. Like every other original undertaking, such contract is binding on the parties, whether in writing or not, and may be enforced by the person for whose benefit the promise is made·

3. The subsisting liability of George W. Emerick is no objection to a recovery. *Gold and Sill vs. Phillips*, 10 *J. R.* 412 ; *Russell vs. Babcock*, 14 *Maine*, 140, and the cases cited above.

4. If the defendant received property from George W. Emerick for the purpose of paying his debt to the plaintiff, and converted the property into money, or in any other way received the avails of that property, the plaintiff could then maintain na action for money had and received, and recover the amount of the money or avails so received, not exceeding the amount of such debt. *Comyn on Con.* 319 *Western vs. Baker*, 12 *J. R.* 276, 281; 1 *Cow. Treat.* 126; 1 *J. Cases*, 205.

5. The bill of exceptions not showing that all the evidence in the case is set out in the bill, the presumption is, that the evidence justified the instructions given, or the refusal to give those requested. 2 *Pike*, 506; 10 *Yerger*, 449 ; 1 *Meigs*, 163 ; 2 *Humph.* 494 ; 4 *Mis.* 504 ; 1 *Aik.* 210; 2 *id.* 26, and numerous other cases cited.

6. The exceptions to the charge should have been more specific. 1 *N. J.* 597.

7. The court must look to the whole record, in order to ascertain the effect of the instructions, and what must have been understood by the jury. 10 *Ohio*, 592 ; 4 *U. S. Dig.* 287, *secs.* 234–5.

In illustration of these points, the counsel for the defendant in error, submitted a very able printed

argument, (not having been present at the hearing of the case at bar,) but our limits and plan preclude its insertion entire, and a synopsis is deemed, after effort, impracticable, without seriously impairing its force. This loss will be somewhat compensated for, in the elaborate opinion of the court, as the argument aforesaid was mainly a commentary upon the cases relied upon in support of the view which the counsel for the defendant took of the case ; and the leading authorities cited, are fully discussed in the opinion.

*By the Court,* CRAWFORD, J. This case comes before us by a writ of error, from the County Court of Walworth county, where a judgment was rendered in favor of the defendant in error.

In the trial below it was shown that one George W. Emerick, (son of the plaintiff in error,) was indebted to the defendant in error, Henry Sanders, upon two promissory notes, one of which was for the sum of forty dollars and the other for six dollars and thirty-four cents, and that these notes became due in 1850 ; that George W. Emerick had left property in the hands of his mother, (the plaintiff in error,) to pay his debts, and had thereupon left the country; that Mrs. Emerick knew of her son's indebtedness to Sanders, and had said "that it was an honest debt and should be paid ;" that "he had left plenty of property in her hands to pay the debts ;" that Mrs. Emerick told Ottman, a witness in the case, that she had said to the plaintiff, Sanders, "she was to pay this debt for George W. Emerick, for he had made arrangements with her for that purpose," and that "she owed the plaintiff, Sanders, for a horse, or horses, which her son, George W. Emerick, bought

JUNE TERM,
1853.

Emerick
vs.
Sanders.
of plaintiff, because George W. Emerick had left property with her to pay this debt."

We have not referred to all the evidence given, but have only directed attention to those particular parts which would seem to establish a liability against the defendant.

Upon the trial below, the defendant by her counsel, asked the court to instruct and charge the jury as follows:

" 1st.   If the jury believe, from the evidence, that George W. Emerick left personal property with defendant, as trustee, to pay his debts, any promise made by her to pay plaintiff's debts against George W. Emerick, not being in writing, is void.

" 2d. If the debt of plaintiff still existed at the time the promise of Mrs. Emerick was made, (if the jury find a promise was made,) and she was a mere trustee of George W. Emerick, the promise should have been reduced to writing, although upon a sufficient consideration."

We do not deem it necessary to examine the other instructions given, or those refused in the case.

The only question presented by this record is, whether the promise of Mrs. Emerick comes within the provisions of Sec. 2 of Chap. 76 of the Revised Statutes, which requires that a promise, to answer for the debt of another person, shall be in writing.

This section of our Statute is substantially the same as Sec. 4 of the English Statute of Frauds.   29 *Car.* 2, *Chap.* 3 ; the application of which has called forth so many adjudications in the English and American courts, that it would be a useless task to review them.   It may be admitted, however, that these cases are, by no means, reconcilable, and that in some of them there is a direct conflict.

Where a debt exists, payable by one person t o another, and a third party agrees with *the creditor* to pay him this debt, so due to him, such an agreement or promise is within the Statute, and must be in writing.

The term agreement, it is said, necessarily implies a consideration, ( *Wain vs. Marlton*, 5 *East.* 10) and even if the Statute did not, in express terms, require that the consideration should appear in the writing, yet in order to the validity of this promise or agreement, to pay the debt of a third party, it must be for a consideration esteemed good in law.

The principal question to be determined in cases of this kind, is, whether the promise or agreement is to answer for the debt, default or miscarriage of another; and this depends on whether the promise can be deemed original or independent of the former liability, or whether it is collateral thereto.

The leading case in England, is *Bickmyer vs. Darnell* (1 *Salkeld* 27), where A became liable for B, that he would safely deliver a horse, which the latter obtained from the plaintiff, and this was held to be a collateral undertaking for another, which, to be valid, must be in writing. This distinction between an *original* and a collateral promise has been preserved throughout the subsequent cases ; but the difficulty has been found in determining what shall or shall not be an original undertaking.

We will refer to a few of the cases in which the subject has occupied the attention, and called forth the *ingenuity* of some of the best and most learned judges.

In the case of *Williams vs. Leper*, (3 *Burr*, 1886,) one Taylor, who was the tenant of the plaintiff, and in arrear for rent, made an assignment of his effects,

for the benefit of his creditors; the defendant, Leper, was employed as a broker, to make sale of the effects, and on the morning of the sale, the plaintiff was about to distrain the goods for the rent, when the defendant promised the plaintiff to pay the arrears, *if the plaintiff would desist from distraining*, and he did desist.

It was held that this promise was "not a collateral promise to pay the debt of another." So also in *Crofts vs. Smallwood*, (*Esp. N. P. C.* 121,) where the plaintiff was applied to by the defendant, to let one *Foster* have some clothing, saying if he would do so, he (the defendant) would pay. Chief Justice Eyre held that the promise was not within the statute.

In *Read vs. Nash*, (1 *Wils.* 305,) plaintiff's testator, brought an action against one Johnson, and the defendant promised if the plaintiff would *withdraw the record*, he, the defendant, would pay him fifty pounds, and this promise was held to be an original undertaking, and not for the debt of another ; as *Johnson was not a debtor*, "there might have been a verdict for him." The case of *Fish vs. Hutchinson*, (2 *Wils.* 94,) was not unlike the preceding case, but is nevertheless quite distinguishable from it. It was this. The plaintiff sued one Vickers, in assumpsit, for a sum of money *which he owed* to the plaintiff, and the defendant, in *consideration* that the plaintiff would stay his action against Vickers, promised to pay the amount owing by Vickers. The whole court held that it was within the Statute, because "*here was a debt of another still subsisting*, and a promise to pay it." It must be obvious that this case is entirely irreconcilable with the case of *Williams vs. Leper*, (above cited,) where the inducement or consideration for the promise of the defendant was the desisting from a

distraint for rent, leaving the liability for the rent

still *subsisting*. And yet these two cases were decided in the Court of Common Pleas, within a few years of each other.

In *Anderson vs. Hayman*, (1 *H. Black*, 120,) the defendant desired the plaintiff to supply his (the defendant's) son with goods, and said : " Use my son well, charge *him* as low as possible, and I will be bound for the payment of the money, as far as £800 or £1000." This was said to a clerk or agent of the plaintiff, who wrote to the plaintiff as follows : " Mr· Hayman says his son will call on you and leave orders, and he has promised me to see you paid if it amounts to £1000." The son was charged on the plaintiff's books. The court were clear that this case was within the Statute, and that the father's promise was void, not being in writing.

To the same effect is *Matson vs. Wharam*, (2 *T. R.* 80,) where it was held that if the original debtor remained *at all liable*, the promise or contract must be in writing. *Price vs. Easton*, (4 *Barn. and Adol.* 433,) was this : William Price agreed with the defendant to work for him, for certain wages, which he did, and in consideration that he, William, would allow his wages to remain in his (the defendant's) hands, the latter undertook to pay the plaintiff £13, which William Price had previously owed to him. The court held that there was no consideration for the promise, moving from the plaintiff to the defendant, nor any privity between them ; and judgment was given for the defendant.

In the case in hand, a debt existed from George W· Emerick, to the plaintiff, Sanders, which remained unpaid when he left the country, and an agreement or

promise to pay *that debt* by any other person than George W. Emerick, must of necessity come within the words of the statute. If, for instance, it be found in this case, that when G. W. Emerick went away, he left in his mother's hands a quantity of chattels, she would be a depository or bailee for him, or she might have bought them and promised to pay him for them, but in neither of these cases could Sanders insist that she was liable to him, for in such case we take it, no implied assumpsit can be urged. Now, if Mrs. Emerick, after she had bought the goods, and had received them, should meet with Mr. Sanders, and without any doubt as to language or intention, should *promise* him to pay her son's debt to him, it is absurd to say that this would not be a "promise to pay the debt of another person," for here there is no indebtedness of her's to Sanders; as far as this transaction is concerned she does stand indebted, but it is to G. W. Emerick, and therewith Sanders has no privity.

We grant that if all three had consented to an arrangement by which the original debt of G. W. Emerick should be cancelled, and Mrs. Emerick should, in consideration thereof, promise to pay the plaintiff, or if, by a like arrangement, Mrs. Emerick, in a part payment of her indebtedness to her son, and with his consent promised to the plaintiff to pay him the amount of his debt; in either of these cases, the promise would be a valid *original* one, having the essential ingredient, a consideration, and need not be in writing, because in either of these cases, G. W. Emerick's debt had ceased. But, whether the transaction was a bailment or a sale, it gave rise to a liability of some kind, from Mrs. Emerick to her son, with which Sanders had no connection whatever, and any subse-

quent arrangement or promise by her to Sanders without the concurrence of George W. Emerick, must, we think, be deemed *collateral* and within the intent and meaning of the statute. We admit, that if a subsequent promise or undertaking were made with Sanders, whereby he would have extended the time of payment of G. W. Emerick's indebtedness, or done any other thing of advantage to the defendant, or which would take from Sanders, some right or privilege, in view of some of the cases, it would be deemed an independent promise for a good consideration, and therefore valid, though not in writing. Such was the case of *Farley* vs. *Cleveland*, (4 *Cowen*, 432,) where Chief Justice Savage held that a promise "founded upon a new and original consideration of benefit to the defendant or harm to the plaintiff, moving to the party making the promise either from the plaintiff or the original debtor," was not within the Statute. To the same effect is *Ellwood* vs. *Monk*, (5 *Wend.* 235;) *Slingerland* vs. *Morse*, (7 *John*, 463;) *Mercein* vs. *Mack*, (10 *Wend.* 461;) and many other cases in New York. In this class of cases it will be observed the liability of the *original* debtor is not at all impaired or taken away, but there are many cases in New York, Massachusetts and other States, in which it has been held that to take the subsequent promise out of the statute, the *original* liability must be extinguished, (*vide Simpson* vs. *Patten*, 4 *John.* 422; *Jackson* vs. *Raymer*, 12 *John.* 291; *Sarson & Sanders* vs. *Wyman*, 14 *Wend.* 246; *Rogers* vs. *Kneeland*, 13 *Wend.* 114; *Watson* vs. *Randall*, 20 *Wend.* 201; *Stone* vs. *Symmes*, 18 *Pick.* 467; *Loomis* vs. *Newhall*, 15 *Pick.* 166; *Sinclair* vs. *Richardson*, 12 *Verm.* 33; 9 *id.* 136. In the

case of *Curtis* vs. *Brown, et al.* (5 *Cush.* 488,) Chief Justice Shaw says : " When, by the new promise the old debt is extinguished, the promise is not within the statute ; it is not then the promise to pay the debt of another which has accrued, but it is an original contract on good consideration, and need not be in writing. But where the original debt still subsists, and where the plaintiff has relinquished no interest or advantage which has enured to the benefit of the defendant, it is not an original contract, but a contract to pay another's debt, and must be in writing."

In the argument of the counsel for the defendant in error, our attention has been called to many cases, some of which require notice, inasmuch as we are specially invoked to an examination of them as conclusive authorities in this case. *Wyman* vs. *Smith*, (2 *Sandf. Sup. Ct. R.,* 331,) was an action of assumpsit to recover a sum of money due to the plaintiff by the brother of the defendant. The defendant received the money from his brother, to pay the indebtedness, as he was proved to have admitted, but whether the remittances from his brother were for that purpose or not, was made an issue in the case, and submitted to the jury, who found a verdict for the plaintiff, and the Superior Court say : " The defendant contends that this is a promise to pay the debt of a third person, and that not being in writing, it is void. We regard it not as a promise to pay the debt of a third person, but as a promise to pay money, which the defendant had received for the use of the plaintiff, and therefore binding."

The principle upon which the Court proceeded in this case, may be gathered from the conclusion of the

opinion. " On the whole, we conclude that where a debtor remits money to a third person, with a direction to pay it to a creditor, and the latter, upon being informed of it, calls upon the remittee, who then positively promises to pay such money to the creditor, it is a valid promise. From and after such promise, *the relations of the parties are changed.* The remittee ceases to be the mere agent of the remitter, liable to have the fund withdrawn from his hands by the countermand of the latter. Thenceforth he is the depository of the creditor's money, holding it for his use, and liable to him for it." Now, if it be true, as a matter of law, that the defendant, in the case just cited, upon promising to pay the plaintiff, ceased to be "liable to have the fund withdrawn from his hands," by the original debtor, or in other words, if the latter thereupon was deprived of all control over his money so remitted, and that too, by virtue of a contract or promise, to which the creditor was a party, it seems to us that his original liability must be thereby *extinguished,* and in that case, the defendant's promise could well be esteemed an original, independent one, within the case of *Jackson* vs. *Raymer.*

But our impression is, that *Wyman* vs. *Smith,* falls properly within the principle of *Farley* vs. *Cleveland,* and but adds another to that class of cases. In *Lippincott and others* vs. *Ashfield,* (4 *Sand.* 611,) the defendant in consideration that plaintiffs should *forbear and give time of payment* to Clussman & Co., (the original debtors) on the note for twelve months, " promised to sell certain property, and to pay, and also promised, or guaranteed, that the property in his hands, belonging to Clussman & Co., should sell

for enough to pay the plaintiff's claim. The *forbearance* in this case brought it within the cases of *Farley* vs. *Cleveland* and *Williams* vs. *Leper*, and indeed the judge who delivered the opinion, holds, that this *forbearance* was a sufficient consideration. But the reasoning by which he takes the case out of the statute, is not at all satisfactory to us. The plain, palpable intention of this statute is, that whenever a debt is payable by one person to another, no third party shall be held liable for such *debt*, unless his promise to be so liable shall "be in writing" and be founded upon a valid consideration. This is one of the provisions of a statute which, it is said, was first enacted to prevent frauds and *perjuries*, by requiring a different species of evidence from the mere *oral* statements of witnesses in certain cases, which it was thought gave too much opportunity for the practice of fraud and the committing of perjury, in setting up and swearing to matters, where it was, in many instances, impossible to show the contrary, and yet the construction given to this statute, in some of the cases which are cited above, in our view, entirely destroys its intention and effect.

So long as the original debt remains due, and payable by the debtor to his creditor, any arrangements whatever, by which another party promises to pay that debt, is within the very letter of the statute, and it matters not from what source *the consideration* for this latter promise flows, it is none the less an agreement to pay the debt of another; but if by the terms of this latter agreement the former liability is taken away or destroyed, there is then no "*debt* of another" remaining, and the subsequent or latter promise cannot be said to be for that which has no

existence. But even where the first or original debt

continues, the statute does not say that another promise for the same debt may not be made by a stranger, to the original transaction ; it only requires that this subsequent promise shall be (like all other valid contracts) for a *good consideration* and in addition thereto shall be in writing, subscribed by the promissor.

In the opinion given by Chief Justice Kent, in the case of *Leonard* vs. *Vredenburgh*, (8 *John.* 29,) he points out three classses of cases, namely : 1. " Cases in which the guaranty or promise is collateral to the principal contract, but is made at the same time and becomes an essential ground of the credit given to the principal or direct debtor." 2. " Cases in which the collateral undertaking is subsequent to the creation of the debt, and was not the inducement to it, though the subsisting liability is the ground of the promise, without any distinct and unconnected inducement. Here must be some further consideration shown, having an immediate respect to such liability, for the consideration for the original debt will not attach to this subsequent promise ;" and 3. " A third class of cases to which I have already alluded, is, when the promise to pay the. debt of another, arises out of *some new and original consideration of benefit or harm moving between the newly contracting parties. The two first classes of cases are within the Statute of Frauds;*" but the last is not. This is a clear and comprehensive classification, but why the third class should be deemed *not* within the statute, we can think of no sound reason. The only distinction between any of these classes relates to the *consideration* for the promise, but admitting the consider-

JUNE TERM, 1853.

Emerick vs. Sanders.

ation to be valid, the statute is not satisfied until the contract be reduced to writing. We think, with all deference, that the third class of the learned Chief Justice, is as much within the statute, as either the first or second class.

But even if our view in this respect be incorrect, still there is nothing shown in the evidence in this case, which can place it among cases in the third class above defined. Mrs. Emerick received no *benefit* moving from the plaintiff, nor did the latter suffer any *harm*, moving from her. Their relative positions were entirely distinct, he being the creditor of George W. Emerick, and she standing in the relation of bailee or debtor of the latter, so that if the defendant can be said to have made any promise, it was a collateral one, "subsequent to the creation of the original debt;" and although the giving of the property *in trust*, or the sale of it, to the defendant, by her son, should be deemed a good consideration for this promise; yet in this respect, we hold in accordance with the opinion of Chief Justice Kent, that it must be in writing, to be valid. This conclusion is not at variance with some of the views of Chief Justice Whitman, in *Hilton* vs. *Dinsmore*, (21 *Maine R.* 410,) in passing upon the case; but it seems to us that when he speaks of the promise of the defendant in that case being grounded upon the consideration of funds placed in his hands by the original debtor, " *as well as upon an agreement on the part of the plaintiff to forbear to sue*," he discloses an element not to be found in the case before us, which brings Hilton vs. Dinsmore exactly within the third class of C. J. Kent, because the *forbearance to sue* is properly

a *harm* or deprivation " moving between the newly contracting parties."

The various adjudications which have been made upon this subject, and the conflict of opinions which may be found in them, render it somewhat difficult to arrive at an entirely satisfactory result; but from the examination we have given to the matter, we conclude that the object of the statute will be best carried out by requiring all agreements to pay the still subsisting debt of another, to be evidenced by writing, unless such subsequent agreement or promise be founded upon a new and independent consideration, passing between the newly contracting parties, and independent of the original contract.

This view of the matter leads us to the conclusion that the court below erred in refusing to give the instructions asked by the defendant's counsel.

The judgment of the County Court is therefore *reversed*, and the cause remanded for a new trial.