## LANGFORD v. FREEMAN.

DECEDENTS' ESTATES.—*Suit Against Heir for Ancestor's Debt.*—As to suits against heirs for the debts of their ancestor, see *Leonard* v. *Blair*, 59 Ind. 510.

CONTRACT.—*Pleading.*—*Presumption.*—Where a contract, on which suit is brought, is not alleged to be in writing, it will be presumed to be by parol.

SAME.—*Statute of Frauds.*—A contract to answer for the debt of another must not only be in writing, but based upon a sufficient consideration.

SAME.—*Action Against Heir on Promise to Pay Ancestor's Debt.*—In an action

Langford *v.* Freeman.

by a creditor, against an heir of his deceased debtor, upon an alleged promise of the defendant to pay such debt, the complaint alleged the existence of a valid debt, the death of the debtor, the filing and allowance of the debt against the debtor's estate, and that the defendant, in consideration of receiving certain assets belonging to such estate, and the proceeds of a certain policy of insurance on the life of the deceased, promised the plaintiff to pay such debt.

*Held*, on demurrer, that the complaint is insufficient.

SAME.—*Fraud.*—*Life Insurance Policy on Ancestor Reissued to Heir.*—A complaint in such case, alleging such debt, death, filing, allowance and promise, also alleged that the debtor had surrendered a policy of insurance on his life payable to himself, and at the instance of the defendant had procured the issuance of another policy payable to the defendant, with intent on the part of the latter to defraud the plaintiff, and that the defendant had received the proceeds thereof.

*Held*, on demurrer, that the complaint is insufficient.

*Held*, also, that an averment, that the decedent merely intended to make the reissued policy payable to the defendant, and not to defeat the collection of the plaintiff's claim, negatives fraud on the part of the decedent.

*Held*, also, that an averment that the defendant had no insurable interest in the debtor's life is unavailable to the plaintiff.

From the Putnam Circuit Court.

*J. G. Williams*, for appellant.

*D. E. Williamson* and *A. Daggy*, for appellee.

WORDEN, J.—This was an action by the appellee against the appellant.

The complaint contained three paragraphs.

A demurrer to each paragraph for want of sufficient facts was filed, and sustained as to the second, but overruled as to the first and third.

Such further proceedings were had, as that final judgment was rendered for the plaintiff.

The assignments of error call in question the correctness of the rulings in respect to the first and third paragraphs.

The first paragraph alleged, in substance, that the defendant was the mother of Eugene J. Holden, deceased; that the said Holden was indebted to the plaintiff in the sum of three hundred and six dollars, for goods, wares and merchandise, sold and delivered by the plaintiff to

him in his lifetime; that the plaintiff filed his account therefor, in the Vigo Circuit Court, against the administrator of the estate of said Holden, and obtained judgment thereon for the sum above mentioned; that the defendant, in consideration of the receipt by her of all the personal property, law library, and other assets belonging to said deceased, of the value of five hundred dollars, as well as the sum of five thousand dollars received by her as insurance upon the life of the deceased, from the Universal Life Insurance Company of New York, agreed and promised plaintiff, that she would pay to him the amount of said account and judgment above set forth, owing to him by said Eugene, but the defendant now refuses to pay the same or any part thereof.

The third paragraph was much more lengthy and minute in its averments than the first, but we make a statement of such parts thereof as seem to be material. It alleges the indebtedness of the deceased to the plaintiff, and the filing and allowance of the claim against his estate, as in the first paragraph. It also alleges that the defendant had a policy of insurance on the life of her said son, payable originally to herself, on which she received the money from the insurance company. We do not see, however, that this policy of insurance has any bearing on the case. But it is alleged, that, on April 11th, 1868, the said deceased took out a policy of insurance upon his own life, payable to himself, issued by the Universal Life Insurance Company of New York, for the sum of five thousand dollars. This policy was numbered 4,173, and was issued upon what is called and known as the " return premium plan," that is to say, at his death, all premiums that he had ever paid, together with the amount of the policy, should be paid by the company to the legal representatives of the said Holden; that, from April 11th, 1868, to April 25th, 1871, said deceased paid out on this policy a large sum of money, to wit, five hundred dollars; that, in taking this policy,

said deceased had in view that the money received upon it should be applied first to the payment of his debts, and that the residue should go to his heirs; that the defendant, on April 25th, 1871, succeeded in having this policy, No. 4,173, returned to said company, and in having the same rewritten at the same rate of premium as that issued on April 11th, 1868, and the policy, as rewritten or reissued, was numbered 11,217, and made payable to the defendant; that the defendant procured the policy to be rewritten and made payable to herself, for the purpose and with the intention of cheating this plaintiff and other creditors of the deceased, in the collection of their claims against him, in case of his death; that the defendant had no insurable interest in the life of the deceased; that the money due on the policy, as well as the return premiums, amounting to five hundred dollars, has been paid by the company to the administrator of the estate of the deceased, who has paid the same over to the defendant; that the defendant, in consideration of the money received by her as aforesaid, agreed and promised to pay said claim against the estate of the deceased; that said deceased, in consenting to have said policy rewritten, merely intended, and had in view, to make the policy payable to the defendant, as he had a. right to direct to whom it should be payable, and that he did not intend to defeat the collection of the plaintiff's claim; that the acts of the defendant in the premises are unlawful, and that the money thus obtained by her belongs to the estate of the deceased, and that she is chargeable therewith as executor of her own wrong; that there are no assets in the hands of the administrator, belonging to the estate. Wherefore, etc.

We direct our attention first to the first paragraph of the complaint.

As to suits against heirs for the debts of their ancestor, see the case of *Leonard* v. *Blair*, 59 Ind. 510.

The first paragraph alleges a special contract on the part of the defendant to pay the plaintiff the debt due him from the estate of the deceased, and the question arises, whether an action will lie thereon.

The promise must be taken to have been made by parol, as it was not alleged to have been in writing, and no copy of it was set out.

A contract to answer for the debt of another must not only be in writing, but it must be based upon a sufficient consideration. It may have a sufficient consideration to support it, and yet not furnish a ground of action, if not reduced to writing. *Berkshire* v. *Young*, 45 Ind. 461; *Krutz* v. *Stewart*, 54 Ind. 178. The only consideration for the defendant's promise was the receipt by her of the effects of her son, as alleged in the paragraph under consideration. It may be doubtful whether such consideration is sufficient. It may be observed, incidentally, that the receipt by the defendant of the money upon the policy of insurance upon the life of her son, as stated in this paragraph, can furnish no consideration for her promise, for it does not appear that the money did not properly belong to her. In the case of *Emerick* v. *Sanders*, 1 Wis. 77, where A., being indebted, left property in the possession of B. to sell and pay his debts; and B. afterward promised S. to pay him a debt which A. owed him; *held*, that this promise, not being in writing, was void by the statute of frauds. It would seem, that the court made the decision depend, in part at least, upon the ground that the consideration was insufficient. The court said, p. 95: " The various adjudications which have been made upon this subject, and the conflict of opinions which may be found in them, render it somewhat difficult to arrive at an entirely satisfactory result; but from the examination we have given to the matter, we conclude that the object of the statute will be best carried out by requiring all agreements to pay the still subsisting debt of another, to be evidenced by writing, unless such subse-

quent agreement or promise be founded upon a new and independent consideration, passing between the newly contracting parties, and independent of the original contract."

We do not decide whether the consideration of the promise, in the case before us, would or would not have been sufficient, on common-law principles, to support the promise, had the latter been in writing. But, conceding for the purposes of the decision, that the consideration would have been sufficient, still, as the promise was not in writing, we are of opinion, that it was within the statute of frauds, and that no action can be maintained upon it. The agreement or promise of the defendant did not extinguish, or put an end to, the plaintiff's claim against the estate of Holden. The general rule is, that the new agreement must put an end to the original debt and extinguish it; otherwise the new promise will be regarded as collateral, and within the statute. *Krutz* v. *Stewart*, *supra; Crosby* v. *Jeroloman*, 37 Ind. 264. See, also, *Palmer* v. *Blain*, 55 Ind. 11.

There are some exceptions to this rule. See the case in 37 Ind., above cited. But the case before us does not come within any of the exceptions. The case here is similar to that of *Chandler* v. *Davidson*, 6 Blackf. 367.

There a widow had verbally promised the plaintiff to pay him a debt which her deceased husband owed him, in consideration of assets of her husband in her hands. The court said: "It is said, however, that considering her as being possessed of the goods under the will, she was under a moral obligation to pay the debts of the estate to the value of the goods, and that such obligation was a sufficient consideration for the express promise sued on. Whether this consideration would have been sufficient, supposing the goods to be held under the will, had the promise been in writing, it is not necessary to decide. The promise was to pay, not the promisor's own debt, but a debt due by her deceased husband; and such a promise,

to be the foundation of a suit, must be in writing by the statute of frauds, unless the consideration be sufficient to give to the promise the character of an original undertaking.

" There are, no doubt, cases in which a verbal promise to pay the amount of another person's debt, is an original promise, and not within the statute of frauds. They are cases, however, in which a new consideration passes, at the time of the promise, between the newly contracting parties, of such a character that it would support a promise to the plaintiff for the payment of the same sum of money, without reference to any debt from another. 2 Stark. Ev. 478. Such are the cases of *Williams* v. *Leper*, 3 Burr. 1886, and *Castling* v. *Aubert*, 2 East, 325. But it is evident that the moral obligation relied on in this case, was not a consideration of that description. It was not a consideration that passed between the newly contracting parties, nor was it one that would have sustained a promise to the plaintiff to pay him the same amount, supposing the debt from the estate not to have existed.

" The plaintiff further says, that the wife may be viewed as an executrix *de son tort*, on the ground of her having wrongfully taken possession of some of the goods, and brought them to this State; and that her express promise, therefore, would support the suit. But assuming her to have been such executrix, and that she would have been bound in her own right, in consideration of assets, were the promise in writing, to pay the debt in question, still there can be no doubt, we think, that the parol promise was not obligatory on her personally."

In the case before us, the plaintiff has in no manner surrendered his claim as against the estate of his debtor, Holden; nor has he in any manner precluded himself from the right of proceeding against the estate, in all legitimate modes, for the collection of his debt. He has procured it to be allowed, and he has lost no right by his

contract with the defendant, which he had before making the contract. Herein the case differs from that of *Crawford* v. *King*, 54 Ind. 6.

In that case the defendant promised the plaintiff to pay him a debt which he held against the estate of a deceased person, if the plaintiff would not file the claim against the estate, or demand payment out of the assets of the estate. The plaintiff, confiding in the promise, did not require payment out of the assets, nor file the claim against the estate, but suffered the estate to be settled up, and the administrator to be discharged, without payment of the debt. By the terms of the contract, the plaintiff lost all remedy against the estate of the deceased for his debt, and this was equal to an extinguishment of the debt, as against the estate. A covenant not to sue at all upon a claim operates as a release. *Reed* v. *Shaw*, 1 Blackf. 244.

The defendant's promise in that case may well have been regarded as original and not collateral.

The case before us differs, also, from that of *Mitchell* v. *Griffin*, 58 Ind. 559. In that case, Mitchell held a note against Leander Griffin, son of Charles Griffin. Leander had absconded before his note became due, leaving some real estate and some credits and effects in the hands of his father, Charles, in which the latter was interested. Mitchell was about to procure the issuing of an attachment against the property of Leander, in the hands of his father, with garnishment against the latter; whereupon the latter agreed with Mitchell, that, if he would not prosecute the attachment and garnishment proceedings, he, the said Charles, would pay the note of Leander, in the manner stipulated for. Mitchell, by such proceedings, could have realized the amount of his note against Leander, but he desisted from the proceedings, and said Charles caused the property to be placed beyond the reach of legal process, and refused to pay as agreed upon. *Held*, that the contract was not within the statute.

In the case before us, the plaintiff has surrendered no

rights, as against the estate of his debtor. He has given up no lien, nor has he relinquished any remedy, which he might have pursued against the estate.

If the defendant has assets in her hands which belong to the estate of her son, she is responsible to the estate therefor; and, if she were required to pay the plaintiff's claim, the payment might have to be made out of her own means, as such payment would not protect her from liability to account to the estate for the assets in her hands. Her duty, in respect to the assets of the estate in her hands, if she has such, is to account to the proper administrator therefor, that they may be administered according to law, with due regard to priorities, and not to pay them out on particular claims to creditors of the estate. As payment of the plaintiff's claim would not protect her from liability over to the estate, for the assets in her hands, it is clear that her promise to make such payment is within the statute. Throop Verbal Agreements, sec. 533.

We proceed to the consideration of the third paragraph of the complaint.

That paragraph is more objectionable than the first. The contract therein set up is equally within the statute of frauds; and, in addition to that, it fails to show that the defendant has any money or assets belonging to the estate in her hands.

The deceased had a right, on the 25th of April, 1871, to surrender the policy of insurance which he held upon his life, payable to himself, and take out another payable to his mother. This is the substance of what was done. The policy thus issued on that day, payable to the defendant, entitled her to the proceeds thereof, upon the death of the insured, unless other beneficiaries were named, which does not appear. There are no allegations in the paragraph that make this transaction fraudulent as to creditors, if fraud can be predicated of such a transaction in any case. It does not appear, that, at that

time, the deceased had not sufficient means to pay all his debts. If he had, he clearly had the right to change the policy and make it payable to his mother. To make the transaction fraudulent at all as to creditors, it must have been fraudulent on the part of the deceased. This is not only not alleged, but the contrary is stated. It is alleged, " that said deceased, in consenting to have said policy re-written, merely intended and had in view to make the policy payable to the defendant, as he had a right to direct to whom it should be payable, and that he did not intend to defeat the collection of the plaintiff's claim." Thus, fraud on the part of the deceased is negatived. While the deceased did not intend to defeat the collection of the plaintiff's claim, he must be conclusively presumed to have intended the legal consequence of his act in making the policy payable to his mother, which was to entitle her to the money. It is alleged, " that the defendant procured the policy to be rewritten, and made payable to herself, for the purpose and with the intention of cheating this plaintiff and other creditors of the deceased, in the collection of their claims against him, in case of his death." This allegation is clearly insufficient to show that the transaction was fraudulent as to creditors, in the absence of any fraud on the part of the deceased. It is also alleged that the defendant had no insurable interest in the life of the deceased. Without stopping to enquire whether this allegation is well made, no facts being alleged from which such conclusion is drawn, we may observe that it is wholly immaterial to the case whether she had such interest or not. If she had no such interest, that may have been good ground for resistance by the company of payment. Her want of interest in the life of the insured did not entitle the representatives of the deceased, or any one else, to the money specified in the policy; nor does it furnish any ground on which the representative, he having collected the money, could refuse to pay it over to her  If the insurance company did

not make any question in that respect, no one else can question her right to the money on that ground. The defendant being entitled to the money by the terms of the policy and on the facts stated, the administrator rightly paid it over to her.

We are of opinion that the demurrers were well taken to the first and third paragraphs of the complaint, and should have been sustained.

The judgment below is reversed, with costs, and the cause remanded for further proceedings, in accordance with this opinion.